PHŒNIX INSURANCE COMPANY *vs.* P. F. PRATT and another.

February 11, 1887.

**Fire Insurance—Local Agent—Liability for Neglecting Instructions.**
Local insurance agents are liable for losses arising from negligent omissions on their part, in departing from instructions of their superiors in the management of the trust committed to them.

**Same—Direction from State Agent to Cancel Risk — Knowledge of Latter's Authority.**— Where a local agent received instructions from a state agent of the company (whose authority included the supervision of risks taken by the local agents, and the power to order the cancellation of the same) desiring him "to relieve the company" of a certain risk "as soon as possible," which the local agent failed to do, but, instead, answered by letter requesting "that the policy might run to expiration," which would occur a few days later, and stating that it would be an accommodation to him to allow it to so run, and thereafter, within four days, the insured property was burned, before opportunity for reply, *held* sufficient evidence that he understood the instructions of his superior to be a direction to cancel, and a recognition of the authority of the latter to so order.

Appeal by plaintiff from an order of the district court for Anoka county, *Koon,* J., presiding, denying its motion for a new trial.

*Lusk & Bunn,* for appellant.

*Hammons & Hammons,* for respondents.

VANDERBURGH, J. The defendants were local agents for the plaintiff in the city of Anoka, conducting insurance business in its behalf, from June, 1881, until some time after March 4, 1885. They had also been engaged in a general insurance business for many years before. In April, 1883, the defendants, as such agents, issued a policy, in behalf of plaintiff, to the First National Bank of Anoka, upon the Anoka City mill for one year, which was thereafter renewed from year to year, and was in force in March, 1885, when the mill was burned. In July, 1884, the plaintiff appointed one Otto Greely special state agent and adjuster for the company in Minnesota, and duly notified the defendants of such appointment. His duties were not specially mentioned or defined in his commission, or in the notice

to defendants, but the evidence shows that they were generally known and recognized among insurance agents, and, in addition to the adjustment of losses, consist chiefly in the supervision of the business of and risks taken by the local agents of the company, including the renewal and cancellation of policies.

This action is brought against the defendants to recover damages for their alleged neglect to cancel the policy in question, in pursuance of instructions of Greely given before the fire. The defendants admit and testify that on the 28th day of February, 1885, Greely wrote to them as respects the policy in question, "I wish you would relieve us of this risk as soon as possible;" stating also in his letter that he had just learned from two special agents, who had recently inspected the Anoka City mill, that it was a very undesirable risk. Greely testifies, on the other hand, that he used the words, "You will please cancel our policy at once;" but, as the letter was not produced at the trial, the notice must be taken to have been as defendants testify,— the principal question to be determined on this appeal being whether the court should have directed a verdict for the plaintiff upon the evidence in the case.

1. The fire took place four days after the receipt of the letter by the defendants, and no good reason appears why they might not have cancelled the policy within that time if they had been disposed to; and if, under the circumstances, the letter of Greely ought to be construed as an instruction by an authorized superior agent to cancel the policy, the defendants are liable. They were bound to the exercise of good faith and reasonable diligence in discharging the duties which they owed to their principal, and to make good any loss or damages arising from any negligent omission on their part, in departing from the instructions of their superiors in the management of the company's business intrusted to them. *Franklin Ins. Co.* v. *Sears*, 21 Fed. Rep. 290.

2. There is upon the evidence no question but that Greely was in fact authorized to order the cancellation of policies by the local agents. But the defendants claim they had no notice of this fact, and did not understand that his agency included such authority. They admit, however, that they understood that he had general authority over

the business except to order the cancellation of risks in their hands, and he had previously, on several occasions, examined their books, and given directions as to risks, and forbidden renewals. Though he was styled "special state agent for the company," it is apparent that his agency was general as respects the supervision of risks taken by the agents over whom he was placed, and it would be their duty to obey his instructions in respect to the same. The defendants had not known of cases where state agents had cancelled risks, but they knew of no limitation upon his authority in the premises which prevented the exercise of it, and their neglect to comply with the request or direction contained in his letter of February 28th was placed by them on entirely different grounds.

In their reply to his letter dated March 1st, they say the risk would expire April 19th, and ask if he (Greely) could not allow it to run to expiration, and add that they disliked to cancel it, and that it would be an accommodation to them to allow it to run. This letter was not received by Greely until after the fire, which occurred on March 4th. On the morning previous to the fire, they received a letter from the general western agent at Chicago, stating that Greely had reported his action in reference to the cancellation of the risk in question, and that the risk was considered unsafe and undesirable, and coinciding with his opinion that the company ought "to retire from the risk." This, to our minds, did not abrogate or supersede the action of Greely, but was a recognition of Greely's right to cancel, and an approval of his action. He might well assume that Greely had better means of information on the subject. Being a superior officer, he might have interfered; yet it is clear that he was not disposed to do so, but left Greely's direction in full force. It is evident that the defendants were unwilling to cancel, and believed that their superiors were mistaken as to the danger, and they therefore desired delay at least till the result of further correspondence or investigation. But, as they received no authority or encouragement for such delay from the company, the delay was in the mean time at their risk if a fire should occur.

It is clear from their letter in response, written immediately on receipt of his letter, that they regarded the latter as a direction to

cancel, and this is confirmed by their conversation with him after the fire; and it would seem plain from the uncontradicted evidence that there was really no misunderstanding by them either as to the scope of his authority or the meaning of his letter. The company had a right to act upon its own investigation, and upon information derived from other sources than through them; so that if the agents, from a mistaken view as to the safety of the risk and the wisdom of cancelling it, or for any cause personal to themselves as agents of the company, delayed acting, it was at their own peril.

3. It is also urged by the respondents that it does not appear that the plaintiff has lawful authority to do business in this state, nor that the defendants had in their hands money of the plaintiff with which to repay the amount of the unearned premium. As respects the first of these objections, the plaintiff was bound by the policies which these agents procured, (*Ganser* v. *Fireman's Fund Ins. Co.*, 34 Minn. 372; 25 N. W. Rep. 943;) and it would clearly have a right to require them to cancel and discontinue such risks, and they were of course bound by its orders in any matter affecting its liability upon the same. And as to the second objection, the defendants did not in their reply to Greely, or in any communication with him, place their omission to cancel the policy on any such grounds, but the excuses made were of an entirely different nature, and there was no claim or pretence that they did not have sufficient funds of plaintiffs in their hands, derived from premiums, to pay the amount in question, which must have been small, as the policy had nearly expired. No prominence appears to have been given to this point in the court below.

We are of the opinion that there should be a new trial.

Order reversed.