CONTINENTAL INSURANCE Co., Appellant, v. CLARK & CRESSLER, ·Appellees.

**Fire insurance:** WRONGFUL ISSUANCE OF POLICY: LIABILITY OF AGENT. Where insurance agents with authority to issue policies, fraudulently and negligently issue one in direct violation of the company's instructions and purposely fail to report the risk, the company may recover of the agents in case of loss, the damage sustained by reason of such disobedience.

**Fraud:** LIABILITY OF AGENT: ·DEFENSES. The fact that an insurance company did not have sufficient time after the issuance of a policy to avail itself of a provision for cancellation prior to a loss, was not a defense available to its agent in an action against him for the fraudulent issuance of the policy.

**Estoppel.** An estoppel must be pleaded.

**Dismissal of actions:** RATIFICATION: ESTOPPEL. The denial of a count of the petition, tender of the amount claimed and offer to confess judgment therefor, which are refused, will not preclude the right of plaintiff to dismiss as to that count at any time before judgment; nor will it amount to a ratification or work an estoppel.

**Damages:** EVIDENCE. Where it appeared that the agents of an insurance company recommended the payment of a loss in full, the amount of the adjustment was competent evidence of the company's loss in an action against the agents for the wrongful issuance of the policy.

**Negligence:** PLEADINGS. Where an action was bottomed on negligence and the wrong was willful, the petition need not negative contributory negligence.

Liability of agent: MEASURE OF DAMAGES. In an action against an
7 insurance agent for wrongfully writing a risk at a lower rate than
authorized and failing to report the same, and the evidence tended
to show that the company would have cancelled the risk had it
known of it, the measure of damages is the total loss sustained
thereby.

*Appeal from Green District Court.*— HON. Z. A. CHURCH,
Judge.

WEDNESDAY, JULY 13, 1904.

ACTION at law to recover the amount paid by plaintiffs
on a policy of insurance issued by the defendants as its
agents, on the ground that defendants issued the policy with-
out authority, and willfully and fraudulently failed to fol-
low their instructions. Trial to a jury. Directed verdict
for defendants, and plaintiff appeals.— *Reversed.*

*Edmund H. McVey* and *Howard & Howard,* for ap-
pellant

*Wilson & Albert* and *Clark & Cressler,* for appellees.

DEEMER, C. J.— In the year 1898 defendants Clark
& Cressler were appointed agents of plaintiff fire insurance
company for the town of Scranton, in Green county, with
authority to issue policies. They were required to make
daily reports of all policies issued, or, in case they could not
be sent out on the very day, were required to send a short
letter giving the principal particulars of the risk. On Au-
gust 6, 1900, they issued a policy of insurance in the plaintiff
company to Lower Bros. for the sum of $1,000, covering a
stock of hardware and implements in a frame building at
Scranton, at the rate of 2½ per cent. Some correspondence
followed the receipt of the daily report of this risk, which
resulted in a letter from plaintiff to defendants which closed
as follows: "For our part we do not desire to write it at

any such ridiculously low rate. Three and one-half per cent. is low, and two and one-half per cent. is prohibitive, and any company that will accept this class of business at such rate must necessarily come out in the end a heavy loser, as the experience of all old companies shows that this class of business written at these rates must necessarily operate to their great loss, if followed to any extent. We will thank you therefore to take up and return policy No. 1,029 to this office at once upon receipt of this letter or advance the rate to three and one-half per cent. In either event we desire your immediate action." Pursuant to this letter, defendants wrote on the face of the policy: "Canceled pro rata, August 21st, 1900. Premium, $24.00." They also returned the policy thus canceled to the plaintiff, in compliance with its instructions. On August 31, 1901, plaintiff received a telegram from B. O. Clark, and on the following day a letter; each advising it of a loss under a policy to Lower Bros. covering the same property, and written at the same rate as the canceled policy. Plaintiff thereupon investigated the loss, and finally paid Lower Bros. the sum of $861.43 on account of the policy held by them. This policy was issued on August 24, 1901, contrary to instructions; and plaintiff had no notice thereof until advised of the fire, which occurred about eleven o'clock at night on August 29, 1901. This action is brought to recover the amount paid out on account of the loss, $50 expenses in adjusting the same; and $35, the amount of the premium which defendants should have exacted. These facts are all admitted, and, in addition thereto, plaintiff proved that defendant B. O. Clark was present when the loss was adjusted, and told the adjuster that plaintiff ought to pay the full amount of the policy. It also showed that, had it known of the issuance of this last policy before the fire, either through a daily report or otherwise, it would have canceled the policy by telegram.

At the conclusion of plaintiff's evidence, defendants filed a motion for a directed verdict, which was sustained, and

the appeal is from that ruling. Such being the record, we are to determine whether or not plaintiff made a *prima facie* case, entitling it to have the same submitted to a jury.

It should also be stated that after the commencement of the suit, and just as the case was called for trial, defendants made the tender of $35 to the plaintiff — being the amount of the premium claimed in the petition — and also offered to confess judgment for that amount, with costs. Plaintiff refused to accept either the tender or the offer to confess. Nothing further was done with reference thereto until after the trial court had announced its ruling on the motion to direct, whereupon plaintiff asked to dismiss that count of its petition asking to recover the premium, but this the trial court would not permit.

It is conceded that the risk covered by the policy was not a prohibited one. That is to say, the agents had authority to write the policy, provided they exacted a proper rate. Had it been written for a three and one-half per cent. instead of a two and one-half per cent. premium, it would have been issued with authority. Were this all there is to the case, the action of the trial court in directing a verdict, in view of defendants' offer to confess judgment, should not be disturbed. *State Insurance Company v. Richmond,* 71 Iowa, 519. But this is not the exact situation. Here there is a charge of fraud and bad faith on the part of the agents, which has support in the testimony offered by the plaintiff, and a further charge that defendants disobeyed instructions in the matter of daily reports, and fraudulently concealed from plaintiff the fact that it had issued the policy to Lower Bros.; that, had defendants notified it of the issuance of the policy, as required of them by its instructions, plaintiff would have canceled the same, and thus have escaped liability. There was evidence to sustain all these allegations, and we think the court was in error in directing a verdict for the defend-

1. WRONGFUL ISSUANCE OF POLICY: liability of agent.

ants, unless it be for some matters to which we shall presently refer.

If the defendants fraudulently and negligently issued the policy against the express direction of their principal, and continuously and purposely failed to make report thereof, and plaintiff, through this fraud, was compelled to pay a loss which it might have otherwise avoided, there is every reason for holding them liable not only for the premium they should have exacted, but also for the full amount of the damages suffered by it in consequence of defendants' willful wrong. In this respect the case is much like *State Ins. Co. v. Jamison,* 79 Iowa, 245. See also, *Phœnix Ins. Co. v. Pratt,* 36 Minn. 409 (31 N. W. Rep. 454); *Kraber's Ex's v. Union Ins. Co.,* 129 Pa. 8 (18 Atl. Rep. 491); *Am. Cent. Co. v. Hagerty,* 21 Misc. Rep. 213 (45 N. Y. Supp. 617); *Sun Fire Co. v. Ermentrout,* 11 Pa. Co. Ct. R. 21. The question in such a case is not merely one of premium, but of defendants' liability for failure to follow instructions and for fraud, where the evidence shows or tends to show that, but for such fraud and wrong, the policy would not have become binding. The fundamental duty of an agent is to follow his instructions, and subject his will to that of his principal. If disobedience affects the manner of execution, and does not affect the result, doubtless no more than nominal damages may be recovered. But if it results in actual loss or injury to the principal, the latter may recover such damages as he can show he has sustained by reason of such disobedience. *Whitney v. Mercantile Co.,* 104 Mass. 152 (6 Am. Rep. 207); *Brown v. Arrott,* 6 Watts & S. 402; *Harvey v. Turner,* 4 Rawle, 233. These rules form the basis of distinction between the two Iowa cases cited *supra.*

II.  To avoid this conclusion, defendants contend that as, by the terms of the policy, requiring the insurer to give the insured five days' notice of the cancellation of the policy, the instrument could not have been canceled by the plaintiff even if it had been notified of the issuance thereof

through daily reports or otherwise, plaintiff is in no position
to demand the full amount of its loss.    That

*2. FRAUD: liability of agent; defenses.* provision was made for the benefit of the insured, and not for the defendants, and defendants cannot rely thereon for the purpose of escaping liability for their fraud and wrong.    We are of opinion that no one can rely thereon but the person to whom the policy was issued. To permit defendants to assert this as a defense would allow them to advantage themselves of their own wrong. This, of course, they should not be permitted to do.    If this were a suit to cancel the policy, a different rule might obtain, but such is not the situation.    Moreover, the insured might have waived this provision of the policy, upon notification by the company of its desire to cancel.    Indeed, it appears that very thing was done when the first policy was canceled.

III.    They further argue that, as plaintiff brought suit for the $35 premium on the policy, it elected to make the contract its own, and by so doing ratified the acts of its

*3. ESTOPPEL.* agents, and estopped itself from claiming damages.    There is no plea of estoppel in the case. Hence the point need not be considered.    Indeed, there is no pleading which in any manner presents this proposition. Even if there were, we do not think the proposition sound. There might have been an election of remedies which would be binding upon the plaintiff, but this is not pleaded; and in view of the fact that the petition counts upon fraud, violation of instructions, etc., with which is coupled a claim for the premium which should have been exacted, there was, under our holdings, no election in this case.    *Smith v. Bricker,* 86 Iowa, 285.    Perhaps plaintiff might have been required to elect on which cause of action it would proceed, but, as this point is not before us, we may well wait until it properly arises before discussing or deciding it.

The defendants denied all allegations with reference to this $35 premium, but, as we have said, made a tender of this amount, and offered to confess judgment on the count in the

petition asking for the same; but the plaintiff refused to

**4. DISMISSAL OF ACTIONS: ratification; estoppel.** accept either the tender or the offer to confess, and dismissed the same before any judgment was rendered thereon. Where one in a single petition pleads inconsistent matter, he is no more held to an election of one remedy than the other, for, in the absence of an election, it is impossible to say which one he really relies upon. If he, with full knowledge of the facts, brings suit to enforce a contract, and thereafter undertakes to rescind the same, it may be he should be held to an election of remedies and rights. This is certainly true when the first suit proceeds to judgment, but that is not the case here. Much the same line of reasoning applies to the doctrine of ratification and estoppel. Plaintiff did not receive the premium which the agents should have exacted, and before judgment was rendered therefor, which was against plaintiff's protest, it endeavored to dismiss that part of its claim, but the court would not allow it do so. This, we think, was error. Plaintiff had not accepted either the tender or the offer to confess. On the contrary, it had expressly refused to do so, and there is no room for the doctrine of ratification or estoppel. Defendants could not, by a tender or offer to confess which was not accepted, change their relations to the company. Could they do so, it would be very easy to defeat an action by a plea of ratification or estoppel.

IV. Further, it is contended that there is no proper proof of the amount of plaintiff's loss. This is bottomed on the proposition that defendants are not bound by the ad-

**5. DAMAGES: evidence.** justment of the loss made by an agent of the company with the insured. It is sufficient to say in answer to this that one of the defendants, who was agent for the other — for they were in partnership in this business — advised and directed the adjuster to pay the full amount of the policy before any adjustment was made. This being true, there was sufficient evidence to take the case to the jury on this proposition. Moreover, we are inclined to

the view that the adjustment, although made without defendants' knowledge or consent, was *prima facie* the true measure of recovery.

V. But one other point need be considered, and that is a claim made by defendants that plaintiff cannot recover because it failed to negative contributory negligence in its **6. Negligence: pleadings.** petition. The mere statement of the proposition sufficiently refutes the claim. The action is bottomed on defendants' failure, as agents, to obey the instructions of their principal, and upon fraud and willful wrong on their part. In such a case contributory negligence need not be negatived. Call the action what you will — there is no requirement of law that contributory negligence be negatived in such a case. Even if the gravamen of plaintiff's action be negligence, the wrong charged was a willful one, and in such cases contributory negligence need not be negatived in the petition. *Ruter v. Foy,* 46 Iowa, 132; Beach, Contributory Negligence, section 640 *et seq.; Jones v. White,* 90 Ind. 257.

The close point in the case is the measure of damages. If merely nominal, then there should be no reversal; but if, on plaintiff's showing, compensatory damages might be **7. Liability of agent: measure of damages.** allowed, then there should be a reversal, unless the damages to be awarded are simply the premium which defendants should have collected. Where the risk is not a prohibited one, the rule ordinarily is the difference between the rate received and the one that should have been collected, or, if the premium has not been paid, the full amount which should have been collected. But where the gist of the action is the failure of the agent to comply with his instructions ·to report the risk, and the evidence is sufficient to show that the principal would have canceled the policy, had it known thereof, then the true measure of recovery is the loss suffered by the principal. This is the holding in *State Ins. Co. v. Jamison, supra;* and with that we are content. The Richmond Case was decided

upon a demurrer to an answer which recited that the agent acted in good faith, and there was no question regarding failure to follow instructions. Indeed, it appeared in that case that the rate of premium charged was greater than should have been exacted, and there was an express statement that the company would have accepted the risk, had it known of the true facts. Further, it was expressly averred that the agent violated no contract with his company, and that he had no instructions which were unobserved. That case is therefore exceptional.

Defendants were not called upon to disclose their real defense, and what we have said is based solely upon plaintiff's side of the controversy. On a retrial of the case, this thought should be remembered.

For the error in sustaining the motion to direct a verdict the judgment must be, and it is, *reversed.*