Argued July 9, affirmed September 10, 1973

MISSION INSURANCE COMPANY, *Respondent,*
*v.* ENGER INSURANCE COMPANY, INC. ET AL,
*Appellants.*
513 P2d 763

*William B. Wyllie,* Salem, argued the cause and filed a brief for appellants.

*Thomas B. Brand,* Salem, argued the cause for respondent. With him on the brief were Brand, Lee & Ferris, Salem.

BRYSON, J.

Plaintiff brought this action against its agents for damages it sustained as a result of the agents' conduct, which was allegedly in violation of the insurance company's orders and instructions to defendants. The alleged violation bound the insurance company to a contract of insurance on which it had to pay a claim of $8,781.55. The defendant Enger is a licensed insurance agent in Oregon and an officer and employee of defendant Enger Insurance Company, Inc.

The case was tried before the court without a jury. The trial court found generally in favor of plaintiff and entered judgment accordingly. Defendants appeal.

The facts of the case are somewhat complicated and there is inconsistency in the testimony. The trial judge found for plaintiff, and we must view the evidence in a light most favorable to plaintiff. *McPherson v. Cochran,* 243 Or 399, 401, 414 P2d 321 (1966). Kenneth Burke, a 72-year-old driver, procured an automobile liability insurance policy from plaintiff, Mission Insurance Company, through its agents, the defendants. Burke's policy expired on June

6, 1970. In order to renew the insurance policy, plaintiff required Burke to undergo a physical examination.

The evidence shows that the standard practice of plaintiff was to require a physical examination of each insured, who is 65 years of age or older, at regular intervals for the purpose of determining insurability. Plaintiff's regulations and internal office practice were to withhold from issuing or renewing a policy prior to its receipt of a completed physician's statement when one was required. However, Mr. Abbott, plaintiff's general manager in Oregon, testified that he had authorized the renewal of policies prior to the receipt of the required physician's statement, but that such practice was limited to instances where an agent would specifically request renewal of a policy and the insured had made a definite appointment for the required physical examination on a specific date in the near future. Mr. Abbott further testified that this exception was normally made only for policyholders on whom Mission had previous medical reports. He also testified that plaintiff instructed its agents on the procedure for renewal of policies through its manual and through news bulletins.

Prior to June 6, 1970, plaintiff sent the renewal application and physician's statement to defendants and directed defendants to obtain the physician's statement from Burke as a condition to the renewal of Burke's policy. Enger stated that he received the renewal application and the physician's statement from Mission and sent both documents to Burke. However, Enger also stated that it was possible that the physician's statement was never sent to Burke. Even more surprising is Enger's testimony that he did not notice that a physician's statement was

required when he returned the signed renewal application to plaintiff, despite the clear notation that the renewal was "subject to acceptable physician's statement" and despite Enger's testimony that he saw that phrase when he first received the application from plaintiff and when Burke signed the application.

Burke, the insured, testified that he had not received the renewal application nor the physician's statement from defendants and that he simply went to defendants' office to renew his policy on or about June 5, 1970. Burke stated that when he personally appeared at defendants' office to renew his policy, no one informed him of the need for a medical examination or that a medical examination was required as a condition to the renewal of his policy. Burke signed the renewal application form at defendants' office and paid a premium of $62, which was accepted by defendants.

On June 6, 1970, Burke's policy expired. Sixteen days later, on June 22, 1970, Burke was involved in a minor accident. Both defendants and plaintiff were notified of this accident. After receiving notice of the accident, plaintiff notified defendants by memorandum dated July 1, 1970, that plaintiff did not have an application for renewal nor proof of renewal (a renewal certificate) of Burke's policy in its files. In response to this memorandum, defendant Enger sent a photostatic copy of the renewal application in his files and a copy of his ledger card to plaintiff, showing that defendants had received $62 from Burke as premium. The original renewal application signed by Burke was never located.

On July 7, 1970, Mr. Abbott, plaintiff's general manager, notified defendants by memorandum that

plaintiff would not renew Burke's policy until it received a completed physician's statement.

Enger testified that on July 14, 1970, he sent a physician's statement and a letter to Burke, the insured, advising Burke that plaintiff would not renew the policy until plaintiff received the enclosed physician's statement. Burke testified that he did not receive the statement or the letter.

On July 16, 1970, Burke was involved in a second accident, causing injuries to third persons. The third parties claimed damages for their injuries. On July 21, 1970, Burke reported this second accident to defendants who then advised Burke to obtain a physical examination. Defendants submitted Burke's completed physician's statement and report of the second accident to plaintiff on or about July 21, 1970.

Plaintiff made a demand upon defendants to pay the claim of the third persons who had sustained injuries in the second accident. Defendants refused to pay the claim. During this dispute, the Insurance Commissioner for the State of Oregon inquired why plaintiff had no coverage on Burke and why it had denied the claim. Plaintiff explained the series of events that had transpired and reaffirmed its position that it had no effective coverage on Burke. The Commissioner responded that plaintiff was responsible for the conduct of its agents and that plaintiff should pay the claim. On January 28, 1971, after seeking legal advice, plaintiff paid the claim in the amount of $8,781.55. In the meantime, on December 1, 1970, defendants had insured Burke with another insurance company.

On December 2, 1970, plaintiff renewed Burke's policy retroactive to June 6, 1970. Abbott, plaintiff's general manager, testified that the renewal was neces-

sary for administrative reasons since its standard practice for payment of claims required that there first be a policy against which a payment for a claim could be charged.

In January of 1971, plaintiff sent a statement to defendants which included an item for $62, the premium for Burke's renewal. Defendants paid a portion of this item along with the other items which were included in their January statement.

■ Three of defendants' assignments of error contend that the court erred in its findings on the facts. In a law action, tried by the court without a jury, the court's findings have the force and effect of a jury's verdict and must be affirmed on appeal if supported by any substantial evidence. *Kuzmanich v. United Fire and Casualty*, 242 Or 529, 531, 410 P2d 812 (1966); *Fabre v. Halvorson*, 250 Or 238, 239, 441 P2d 640 (1968).

■ From our review of the evidence, as heretofore set forth, we conclude that there is substantial evidence to support the court's general findings in favor of plaintiff.

The defendants next contend that the court erred, as a matter of law, in not finding that the plaintiff ratified the conduct of the defendants when plaintiff retained the insurance premium and renewed Burke's policy, retroactive to June 6, 1970.

Defendants rely principally upon 2 Restatement (Second) Agency, § 416, which states:

> "The ratification or other affirmance by the principal of an unauthorized act done by an agent acting in excess of his power to bind the principal releases the agent from liability in damages to the

principal for having violated a duty to him, *except* when the principal:

"(a) is obliged to affirm the act in order to protect his own interests; or

"\* \* \* \* \*." (Emphasis supplied.)

This section is not applicable in the case at bar. It assumes there was a ratification or affirmance and that is the question to be resolved.

Section 82 of the 1 Restatement (Second) Agency states:

"Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

Section 83 of Restatement, *supra,* provides:

"Affirmance is either

"(a) a manifestation of an election by one on whose account an unauthorized act has been done to treat the act as authorized, or

"(b) conduct by him justifiable only if there were such an election."

■ The cases hold that issuance of a policy and acceptance of a premium by plaintiff, under the circumstances here present, does not necessarily amount to ratification or "manifestation of an election" to treat the act of the agent, Enger, as being authorized. Whether it does manifest such an intention of election is a question of fact and the trial judge found in favor of the plaintiff.

In *Phoenix Western Holding Corporation v. Gleeson,* 18 Ariz App 60, 500 P2d 320, 328 · (1972), the court held:

"The general rule \* \* \* is not applicable so

as to work a ratification of an agent's acts from which the benefit is received where the circumstances surrounding the receipt of a benefit are not such as reasonably tend to show an intention to ratify, or where receipt of the benefit is under circumstances which are as consistent with an intent not to ratify as to ratify. Moreover the principle that ratification follows retention of benefits received is not applicable if the principal receives a benefit the return of which is not possible. * * *"

*See also,* Annotations 35 ALR3d 784 and 35 ALR3d 899 (1971).

In *Mechanics' & Traders' Ins. Co. v. Rion,* 62 SW 44 (Tenn Ch 1901), an insurance company advised its agent that all policies were subject to the instructions of the company. The agent denied that he received such instructions. A series of events occurred wherein the agent issued an unauthorized policy. On the day that the agent received the company's orders directing him to cancel the policy, a fire occurred at the premises of the insured. After a demand upon its agent was refused, the company paid the loss and, after its payment, accepted the premium on the policy. In regard to the receipt and retention of the premiums, the court held:

"* * * Inasmuch as [the agent] had the power to bind the complainant [the insurance company] by the issuance of a policy * * *, the latter in performing that contract would be entitled to all of its incidents. The acceptance of the premium would be no more a ratification of the defendants' breach of instructions than would be the payment of the policy itself. Both the acceptance of the premium and the payment of the loss concerned merely the relations of the complainant and Tobias & Co. [the insured]. * * *" 62 SW at 49.

The acceptance of the premium, the court continued,

"did not necessarily condone the act of the agents in disobeying instructions" since it was beyond the power of the insurance company to withdraw from the policy once the loss had occurred. *Accord, Continental Insurance Co. v. Clark & Cressler,* 126 Iowa 274, 100 NW 524 (1904).

> "So, as between the principal and the agent, the fact that the principal performs, and receives performance under, a contract made without actual authority but within such apparent authority that he was obliged, so far as third persons were concerned, to carry it out, will not necessarily be such a ratification as will release the agent from liability to his principal for making the contract without authority. And if the principal, *e.g.,* an insurance company, performs in such a case, as by paying the amount of a policy upon which it was legally liable, though issued in violation of the agent's instructions, the principal is, as against the agent, entitled to have and retain the fruits of the other party's correlative performance, and may therefore demand the premium from the agent without ratifying his [the agent's unauthorized] act." 1 Mechem, Law of Agency (2d ed 1914) 323, § 439.

> "So where the agent, in violation of instructions, has bound the principal to third parties, the fact that the principal performs or receives performance so far as the other party is concerned, is not such a ratification as will release the agent from his liability to the principal for his breach of duty. * * *" Mechem, *supra,* § 493 at 361.

We conclude from the above that the plaintiff's retention of the portion of the premium and the issuance of the insurance policy to Burke under the facts present in this case do not constitute ratification. The renewal of the policy to Burke was for purposes other than ratification of the defendants' conduct.

Affirmed.