# NATIONAL GENERAL INSURANCE COMPANY v. AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN.

249 N. W. 2d 453.

January 7, 1977—No. 46552.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Mary Jeanne Coyne,* and *O. C. Adamson II,* for appellant.

*Peterson, Bell & Converse, Willard L. Converse,* and *Martin J. Costello,* for respondent.

Heard before Rogosheske, Peterson, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This appeal resulted from an action between two insurers for

apportionment of liability in a claim settlement under the uninsured motorist provisions of their respective automobile insurance policies. The matter was presented on opposing motions for summary judgment to the Hennepin County District Court. The trial court granted summary judgment in favor of American Standard Insurance Company of Wisconsin (American Standard) and awarded it $3,600 plus interest. National General Insurance Company (National General) appeals from the judgment. We reverse.

David K. Watsula, insured by American Standard, was 19 years old and was a member of the household of his father, Carl J. Watsula, who was insured by National General. David was killed on October 20, 1974, when an uninsured automobile in which David was a passenger failed to negotiate a curve in the highway. The American Standard policy issued to David Watsula afforded liability coverage with a limit of $25,000 for bodily injury sustained by any one person, as provided in David's application when he applied for that policy. The policy also covered David for injury caused by uninsured motorists, but the policy limit with respect to the uninsured motorist coverage was claimed by American Standard to be $10,000—a lesser limit than that provided with respect to coverage for bodily injury liability. This becomes important in determining the only issue before us, that is, the interpretation of the pertinent sections of Minn. St. 1971, § 65B.22, as to whether the insured requested *in writing* different limits regarding these two coverages. Otherwise, the statute requires that they be equal.

American Standard's agent, Jack Lund, stated by affidavit that when he took David Watsula's application for automobile insurance, David asked initially for the lowest possible limits of coverage. He did not want either uninsured motorist coverage or any supplementary coverage which Lund tried to sell him. Lund said he told David that "it was a state law that he had to carry at least 10/20 U M coverage." According to Lund, David ultimately agreed to purchase a policy affording liability cov-

erage with limits of $25/50,000 but wanted uninsured motorist coverage with limits of $10/20,000 "because he couldn't afford any more."

On the application which David signed, the limits of liability for bodily injury and property damage are designated as 25/50/10 by an "x" mark within a box. A premium of $65.60 is shown in handwriting for that coverage. The inclusion of uninsured motorist coverage is also indicated by an "x" mark within a box. The space provided on the application for insertion of the limits of the uninsured motorist coverage is blank. Alongside a printed notation, "Show here any prem. not included above with BI/PD," the figure $3.00 is written. The affidavit of D. H. DeBower, branch underwriting manager for American Standard, states that this $3.00 premium corresponds to the basic uninsured motorist limits of 10/20. The application shows a total premium of $68.60 and that the agent had received that amount in payment of the premium.

On the reverse side of the application there appears the "Applicant's Certification," consisting of five paragraphs, all part of the printed form. The last paragraph states, "If Uninsured Motorist coverage is to be provided, I have selected the limits as shown on the other side. As required by state law the agent has explained available supplementary coverage options, and I hereby reject any such coverage not applied for in this application." David K. Watsula's signature appears below the printed words, "Applicant's Signature."

At the time of David's death, National General insured his father, Carl J. Watsula, who owned four automobiles. The limits of liability under the National General policy with respect to bodily injury and uninsured motorist coverages are $10,000 for each person and $20,000 for each occurrence. The uninsured motorist coverage afforded by the National General policy insured Carl Watsula and his relatives residing in his household. Both the American Standard and National General policies have "other insurance" clauses.

A few months after David's death, the claim of Opal M. Watsula as trustee for David's next of kin was settled by payment of $32,000, of which National General paid the sum of $22,000 and American Standard paid the sum of $10,000. Thereafter, National General commenced this action. Asserting that the American Standard policy, in which David Watsula was the named insured, affords uninsured motorist coverage of $25,000 per person and that American Standard is primarily liable (while National General has only secondary liability), National General sought to recover $15,000 as reimbursement of its excess contribution toward the settlement payment, together with interest thereon from the date of payment. Contending that its policy afforded only $10,000 uninsured motorist coverage and that the loss should be prorated between the insurers, American Standard entered a counterclaim for the recovery of $3,600, together with interest.

On opposing motions for summary judgment, the trial court awarded judgment of $3,600 in favor of American Standard on the ground that the American Standard policy afforded only $10,000 uninsured motorist coverage, that the National General policy afforded $40,000 uninsured motorist coverage, and that the insurers were concurrently liable, so that each must pay a proportionate share of the loss.

The issue regarding the "stacking" of uninsured motorist coverages was resolved by this court in Integrity Mut. Ins. Co. v. State Auto. & Cas. Underwriters, 307 Minn. 173, 239 N. W. 2d 445 (1976), and is not a matter of contention on this appeal. By that resolution it is settled that American Standard is primarily liable to the extent of its policy limits; National General is secondarily liable for the remainder of the settlement. The only issue before us, therefore, is whether the application procedure followed by American Standard satisfies the requirements of Minn. St. 1971, § 65B.22, subd. 3 and Minn. St. 1973 Supp.,

§ 65B.22, subd. 8.[1] The memorandum of the trial judge accompanying the order for summary judgment thoroughly examines this issue. In reaching his conclusion that § 65B.22 had been satisfied, the trial judge relied on three subsidiary findings:

(1) That the rule of Johnson v. Concord Mutual Ins. Co. 450 Pa. 614, 300 A. 2d 61 (1973), was applicable to decide whether

---

[1] Minn. St. 1971, § 65B.22, subd. 3, reads: "Subd. 3. No automobile liability or motor vehicle liability policy of insurance, included within the definition of policy of automobile liability insurance contained in subdivision 1, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, including colliding motor vehicles whose operators or owners are unknown or are unidentifiable at the time of the accident, and whose identity does not become known thereafter, because of bodily injury, sickness or disease, including death, resulting therefrom. The policy limits of the coverage required by this section shall be at least equal to the amount set forth in section 170.25, subdivision 3, [$10,000] until January 1, 1971; thereafter, at the option of the insured, the uninsured motorist limits shall be equal to those provided in the policy of bodily injury liability insurance of the insured or for such lesser limits as are designated in writing by the insured, which may not be less than the amount set forth in section 170.25, subdivision 3 [$10,000]."

Minn. St. 1973 Supp., § 65B.22, subd. 8, reads: "Subd. 8. Beginning January 1, 1972, any company issuing a policy to an insured for the first time or for the first time after such date effects the renewal of a policy previously issued shall include the higher limits of coverage provided for in subdivision 3, unless the insured chooses in writing such lower limits as are provided for in said subdivision 3; thereafter the policy if renewed shall be with the limits of the previous policy unless the insured shall in writing request different limits within the limits provided for in said subdivision 3."

(This statute was repealed by the no-fault law, effective January 1, 1975. L. 1974, c. 408, §§ 33, 35.)

David Watsula had chosen the $10,000 uninsured motorist limit;

(2) that all the circumstances surrounding the execution of the insurance application were to be considered in addition to the written application itself;

(3) that the affidavit of American Standard agent Jack Lund was not inadmissible under the "dead man's" statute, Minn. St. 595.04.

Reliance by the trial court on the Johnson case seems well placed. That case involved an alleged waiver of uninsured motorist coverage wherein the insured had signed beneath a line of capital letters reading: "I hereby state that I do not desire uninsured motorist coverage in my auto liability policy." The Pennsylvania Supreme Court found this language insufficient to satisfy the statutory requirement of a "[rejection] of such coverage in writing." 40 Pa. Stat. § 2000. The court also examined oral testimony concerning the conversation between the agent and the applicant, and found it insufficient to cure the deficiency of the application. Citing numerous recent cases from other jurisdictions, the court established this standard for waiver of uninsured motorist coverage:

"* * * We must conclude that a waiver of uninsured motorist coverage is effective only if the waiver manifests the intentional relinquishment of this legislatively granted right of insurance protection." 450 Pa. 620, 300 A. 2d 64.

Following the Johnson analysis, the trial judge first examined the written application and found it insufficient to demonstrate a "knowing, mindful and intentional written selection of the lower $10,000 policy limits." This conclusion is supported by the facts. As mentioned above, the space for uninsured motorist limits has been left blank on the face of the application. While there was evidence that it was "company policy" to leave this space blank when the minimum limits were selected, and merely fill in the premium for $10,000 coverage, this evidence was properly not considered as determinative by the trial judge. The ap-

plication itself, on the reverse side above the signature among other provisions already quoted, states: "If Uninsured Motorist coverage is to be provided, I have selected the limits as shown on the other side." This statement is meaningless if no limits are shown on the reverse side. The trial judge had good reason to conclude that it was "impossible [from the face of the application] to ascertain whether he made a knowing and intentional selection of the lower limits without taking account of the surrounding [circumstances]. As the above cited cases state, resort may be had to extrinsic evidence to reveal these circumstances. Hagar v. Elite Insurance Co. [22 Cal. App. 3d 505, 99 Cal. Rptr. 423]; Johnson v. Concord Mutual Insurance Co., *supra*."

As in Johnson, the "extrinsic evidence" consists of the conversation between the agent, Jack Lund, and the applicant, David Watsula. The complicating factor in this case is that David is deceased, so that the only remaining evidence is the testimony by affidavit of the agent. The trial judge decided that this evidence was not barred by Minn. St. 595.04, our "dead man's statute,"[2] citing Ikenberry v. New York Life Ins. Co. 127 Minn. 215, 149 N. W. 292 (1914); Boehne v. Guardian Life Ins. Co. 224 Minn. 57, 28 N. W. 2d 54 (1947); and Marvin Oreck, Inc. v. Connecticut General Life Ins. Co. 290 Minn. 23, 186 N. W. 2d 673 (1971). As noted in Marvin Oreck, the party seeking to exclude the testimony must prove that the agent's interest was "direct and immediate." In re Estate of Arnt, 237 Minn. 245, 248, 54 N. W. 2d 333, 336 (1952). The trial judge held that agent Lund

---

[2] Minn. St. 595.04 reads: "It shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties, unless the testimony of such deceased or insane person concerning such conversation or admission, given before his death or insanity, has been preserved and can be produced in evidence by the opposite party, and then only in respect to the conversation or admission to which such testimony relates."

was neither a party to the action nor did he have any direct or immediate interest in its resolution. The cited cases adequately support the trial judge's conclusion on this point; hence Lund's affidavit was properly admitted.

The trial judge found that the affidavit taken as a whole showed that David, by signing the application with the premiums as shown, "knowingly and intentionally selected in writing the minimum amount of $10,000 uninsured motorist coverage * * *." On appeal, National General does not challenge this conclusion as a factual matter (National General also moved for summary judgment), in essence admitting that whatever David did, he did "knowingly and intentionally." The question the company raises is not his intent but whether he made his choice in writing, as required by the statute. The trial judge held that David's signature together with the premium shown on the face of the application was sufficient.

We disagree with the trial court and follow a more strict interpretation as in Johnson v. Concord Mutual Ins. Co., *supra*, wherein the Pennsylvania Supreme Court, in analyzing a statute very similar to that of Minnesota, stated:

"* * * It is evident that this claimed rejection is not affirmatively expressed in writing by the insured. * * * The statutory mandate may be complied with only by including uninsured motorist coverage or by an affirmatively expressed rejection in writing by the insured. Nothing less will satisfy the statutory obligation.

"The single line on the carrier's printed form is insufficient on its face to constitute a valid rejection." 450 Pa. 621, 300 A. 2d 65.

We must therefore put the trial court's finding of "intent" aside. Inasmuch as the statutory mandate stated in plain and unambiguous language, expressing a definite meaning, has not been complied with, there is no need for statutory construction. The statement, "I have selected the limits as shown on the other side,"

when in fact there are no limits shown on the other side, does not meet the clear requirement of the statute.

Since we hold that the insured did not designate in writing lesser limits of uninsured motorist coverage as required by statute, the American Standard policy uninsured motorist coverage is equal to $25,000, as afforded under bodily injury coverage. Therefore American Standard is primarily liable to the extent of its $25,000 limit and National General is secondarily liable for $7,000, the balance of the $32,000 settlement.

We reverse with instruction to enter judgment in favor of National General in the amount of $15,000, plus interest from April 1, 1975.

Reversed and remanded.