**Wesley RANDALL, Respondent,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Appellants.**

No. CX–82–995.

Supreme Court of Minnesota.

June 24, 1983.

Lommen, Nelson, Sullivan & Cole, V. Owen Nelson and Thomas D. Jensen, Minneapolis, for appellants.

Meshbesher, Singer & Spence and John P. Clifford, Minneapolis, for respondent.

KELLEY, Justice.

Appellant State Farm Mutual Automobile Insurance Company (State Farm) and its agent Lynn Bauman appeal from a judgment finding respondent Wesley Randall entitled to personal injury protection benefits for injuries he sustained as a result of a motorcycle accident. Respondent claims that State Farm is liable for the payment of personal injury protection benefits because it failed to make the statutorily-mandated offer of such coverage in connection with his renewal or reinstatement of motorcycle insurance in the year of the accident. Because we conclude the trial court erred in framing the sole interrogatory submitted to

the jury and in its instructions to the jury, we reverse.

Respondent Wesley Randall was an insured motorcycle operator who sought compensation from his insurer, State Farm, for basic economic losses incurred by him as the result of a motorcycle accident while operating the vehicle on August 31, 1979. The issue in this litigation is whether optional basic economic loss coverage should be read into Randall's policy with State Farm because the insurer failed to make a mandatory offer of such optional coverage as required by Minn.Stat. § 65B.49, subd. 6(d) (1978) (repealed 1980).

Respondent Randall had purchased motorcycle insurance from State Farm through agent Bauman since the 1960's. He typically purchased insurance only for the summer months. The 1979 policy he had on the motorcycle at the time of the accident did not provide benefits for basic economic loss. None of the policies issued to him by State Farm prior to 1979 provided for such coverage.

It is undisputed that in 1974 or 1975 Randall received from State Farm an "Important Notice to Minnesota Motorcycle Owners." This notice explained the optional basic economic benefits package and instructed customers to contact their agents if such coverage was desired. Randall purchased insurance thereafter that did not include the no-fault coverage.[1] A dispute exists whether Randall and Bauman discussed in April of 1979 the subject of no-fault coverage. A portion of the application providing for such coverage in 1979 was crossed out with the notation of "No PIP." Randall signed the application.

The trial court submitted a single special verdict interrogatory as follows:

QUESTION: In *April of 1979* did Defendants offer Plaintiff personal injury protection in connection with the policy of insurance purchased by Plaintiff in *April of 1979?*

ANSWER: No.

(emphasis added). The trial court adopted the special verdict and awarded respondent personal injury protection benefits plus 10% annual interest on the insurance proceeds due him pursuant to Minn.Stat. § 65B.54 (1978). Appellants here claim that the trial court erred in framing the special verdict interrogatory by limiting it to April 1979. They further claim that the trial court erred in its instructions to the jury.

1. Appellants contend the jury interrogatory is erroneous because an insurer was not required under Minnesota law, as it then existed, to make the mandatory offer of personal injury protection coverage with each renewal or reinstatement of motor vehicle insurance.[2] They rely on *Hastings v. United Pacific Insurance Co.,* 318 N.W.2d 849 (Minn.1982), and *League General Insurance Co. v. Tvedt,* 317 N.W.2d 40 (Minn. 1982).

In *Hastings,* the insured was involved in an automobile accident in 1979. He sought to have underinsured motorist coverage benefits read into a policy purchased in 1979. The insurer claimed it had made an adequate offer of underinsured motorist coverage by mailing a letter and optional coverage form in both 1974 and 1975. We held that the mailed notices did not satisfy the "four concerns" of the courts in determining the sufficiency of mandatory offers.[3] However, we clearly implied that had the notices mailed in 1974 and 1975 passed the "four concerns" test, they would

1. There exists a dispute concerning the purchase of insurance in 1978. Because of an unintentional mistake by State Farm and the agency, Randall claims he thought the no-fault coverage was a mandatory part of the 1978 policy.

2. Appellants preserved their appeal rights by timely objecting to the submitted interrogatory.

3. The "four concerns" were: (1) that the notification be commercially reasonable; (2) that the insurer specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) that the insurer intelligibly advise the insured of the nature of the optional coverage; and (4) that the insured be apprised that optional coverages are available for a relatively modest increase in premiums. *Hastings v. United Pacific Insurance Co.,* 318 N.W.2d 849, 852–53 (Minn.1982).

have constituted adequate offers under the statute notwithstanding that they had not been reoffered at each subsequent policy anniversary renewal date.

*League General Insurance* arose out of a 1980 automobile accident. In 1978, at a time the policy was up for renewal, the insurer sent the insured material explaining the optional coverages available. The insured renewed his policy, after receiving the materials, purchasing only minimum statutory coverage. He renewed again in 1979 by purchasing the same limited coverage. The latter policy was in effect at the time of the accident. We held that the mailing sent to the insured in 1978 constituted an adequate offer under section 65B.49, subd. 6.

 Thus, in both cases we examined the contents of alleged offers made to the insured during years previous to the purchase of the policies involved. Both cases stand for the proposition that the mandated statutory offers of insurance coverage need not be made at the time of each and every annual policy renewal or reinstatement. We see no reason not to extend the same rationale to seasonal policy renewals or reinstatements. Therefore, in our view, the jury interrogatory is in error. It unduly narrowed the time scope of the jury's consideration such that only an offer made during April 1979 could result in an affirmative answer.

The trial court adopted the jury's answer to the special verdict interrogatory. It made no further findings of fact regarding whether either agent Bauman or State Farm had made legally sufficient mandatory offers. Had the jury been asked whether Randall at some time in the insurance dealings between the parties been given appropriate offers, the jury's answer might have been different. The record indicates

that Randall knew what personal injury protection coverage was and that he knew it was very expensive in the context of motorcycle insurance. We, of course, have no way of knowing whether the jury might have inferred that Randall's knowledge meant he had in fact been offered such insurance coverage. However, such an inference would not be unreasonable. Accordingly, we hold that the trial court's error in basing the judgment on the jury's answer to the verdict interrogatory was prejudicial. *Employers Mutual Casualty Co. v. Chicago, St. Paul, Minneapolis & Omaha Railway Co.*, 235 Minn. 304, 50 N.W.2d 689 (1951).

2. In its instructions to the jury on the application of section 65B.49, subd. 6(d),[4] the trial court said:

> You are instructed that the insurance company has the burden of proving that it did make the mandatory offer of P.I.P., or personal insurance protection to the insured. The offer need not be stated in any particular words, but must be stated in such a way that a reasonable insured would know, under all the circumstances, the nature of the coverage and *its cost.*

(emphasis added). Appellants objected at trial to the "cost" aspect of the instruction. They contend that under the statute information on the cost of personal injury protection need not be presented to a purchaser of motorcycle insurance. In the alternative, they argue that even if such information must be communicated at the time of the offer, quotation of the specific premium rate or "cost" is not required.

As indicated in division 1 of this opinion, in *Hastings* we have indicated there are four basic concerns courts should consider in determining whether there has been compliance with the mandatory offer provisions of section 65B.49, subd. 6. Only the fourth "concern" is relevant to our examination of

---

**4.** The relevant part of the statute provided:
 Reparation obligors shall offer the following optional coverages in addition to compulsory coverages:

\* \* \* \* \* \*

 (d) Basic economic loss benefits to all persons purchasing liability coverage for injuries

the trial court's instruction.[5]

Appellants State Farm and Bauman urge that we except the insurer from meeting the fourth "cost" concern in situations involving offers of motorcycle basic economic loss insurance. They argue that the court's rationale for the "cost" concern is inapplicable under section 65B.49, subd. 6(d) of the statute.

We have required that the mandatory offer in automobile insurance cases include an appraisal of the "relatively modest increase in premiums," *Hastings*, 318 N.W.2d at 853, based on the reasoning that "[e]ven an insurance customer who asks for the minimum coverage might decide to buy additional coverage if told that the additional protection could be had at a minimal cost." *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 250 (Minn.1980). Appellants here argue that the rationale that a purchaser may be inclined to buy optional coverage if told that the cost would be minimal does not apply in motorcycle no-fault coverage cases because personal injury protection coverage is very expensive. Appellants imply that telling purchasers the cost of this optional coverage before purchasers request cost information could actually discourage sales of the optional coverage.

The expensive nature of motorcycle no-fault coverage is the apparent reason that the legislature excluded motorcycles from compulsory no-fault insurance. *Gudvangen v. Austin Mutual Insurance Co.*, 284 N.W.2d 813, 817 (Minn.1978), *aff'd on rehearing*, 284 N.W.2d 817 (Minn.1979), *appeal dismissed*, 444 U.S. 1062, 100 S.Ct. 1002, 62 L.Ed.2d 745 (1980). The legislature intended that the motorcycle operator should make the decision whether to purchase such coverage. The legislature required that the insurer *offer* the optional coverage, rather than simply make the coverage available on request. *See Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 249 (Minn.1980). *Compare* Minn.Stat. § 65B.49, subd. 6(d) (1978) (repealed 1980) ("shall offer" language)

with Minn.Stat. § 65B.25 (1971) (repealed 1974) ("made available" language). Although appellants need not have made an offer in the strict sense of contract law, *League General Insurance Co. v. Tvedt*, 317 N.W.2d 40, 43 (Minn.1982), we have strictly interpreted the statute to require a "meaningful offer." *See Kuchenmeister v. Illinois Farmers Insurance Co.*, 310 N.W.2d 86, 88 (Minn.1981). This interpretation supports respondent Randall's position that the offer of optional coverage should provide the purchaser with sufficient information to make an "intelligent" decision. Thus, we must determine whether a motorcycle insured has sufficient information to make an intelligent decision whether to buy optional no-fault coverage when the offer does not include the cost or even a rough estimate thereof.

Militating against eliminating the "cost" concern in motorcycle insurance cases is the very fact that such insurance is very expensive. The relatively high cost of no-fault coverage in motorcycle insurance policies could draw the attention of the purchaser to the likelihood that personal injury could occur and the importance of carrying such insurance. Admittedly, the high cost may also discourage some potential customers from purchasing optional coverage as appellants here contend. However, respondent's position that an intelligent consumer decision cannot be made without knowledge of at least the approximate costs involved appears to be valid.

Accordingly, we can perceive no reason why an insurer writing motorcycle insurance should not be required, as part of the mandated offer, to furnish the insured sufficient information to apprise the insured of the approximate cost of the additional protection. To so require is supportive of the firm legislative policy favoring the optional coverage. *See Kuchenmeister v. Illinois Farmers Insurance Co.*, 310 N.W.2d 86, 88 (Minn.1981).

---

arising out of the maintenance or use of a motorcycle.

5. The fourth concern is: that the insured be apprised that optional coverages are available for a relatively modest increase in premiums.

Appellants alternately argue that even if some cost information must be communicated to the insured, specific premium rate quotation is not required. We have previously held that specific premium rate quotes are not required with the offer of optional coverage provided the insured is informed that the optional additional protection is available for a small additional cost. It is insufficient, however, if the insured is told only that the optional coverage "may be purchased." *See Hastings v. United Pacific Insurance Co.,* 318 N.W.2d 849, 853 (Minn.1982). It is not clear from the record here that specific information on the additional cost of personal injury protection coverage was given to Randall by State Farm. However, there was evidence that Randall knew that optional personal injury protection coverage would almost double the premium cost. From this the jury could have reasonably inferred that Randall had been informed by State Farm of the estimated additional cost for personal injury protection coverage. On the other hand, the court's instruction told the jury that the offer must be made so that the purchaser would know "its cost," leaving the definite implication that a precise premium rate "was required." In line with *Hastings,* the instruction should have been expanded to provide the insurer's obligation was to give the purchaser an "estimated" or "rough idea" of cost. We are unable to say that had the jury been given an instruction couched in those terms, it would not have returned a different verdict. Particularly in view of the time scope limitation in the jury interrogatory, we view the instruction as given to be prejudicial.

Because the special verdict interrogatory was unduly limited in its time scope and because the instruction relative to cost of the optional coverage placed an unwarranted burden on appellants, we reverse and remand to the trial court for a new trial.

Reversed and remanded.