**William P. MAHER, Appellant,**

v.

**ALL NATION INSURANCE COMPANY, a Minnesota Corporation,**

**and**

**Mutual Service Casualty Insurance Company, a Minnesota Corporation, Respondents.**

No. C7–83–1144.

Court of Appeals of Minnesota.

Dec. 7, 1983.

---

1. The majority opinion strikes down the 30 years deferred probation but upholds full resti-   tution.

Robins, Zelle, Larson & Kaplan, S. Todd Rapp, St. Paul, for appellant.

Murnane, Conlin, White, Brandt & Hoffman, Lawrence R. King and Thomas Pearson, St. Paul, for respondents.

Considered and decided by PARKER, WOZNIAK and LANSING, JJ., without oral argument.

## OPINION

PARKER, Judge.

Appellant William Maher appeals from a judgment of the Ramsey County District Court denying Maher's claim in a declaratory judgment action seeking reformation of an insurance contract. The district court ruled that respondent Mutual Service Casualty Insurance Company (Mutual Service) made a meaningful offer of underinsured motorist coverage to the appellant's father, Paul Maher, pursuant to Minn.Stat. § 65B.49, subd. 6(e) (repealed 1980).

On November 11, 1978, Maher was severely injured when, as a pedestrian, he was struck by a motor vehicle driven by Thomas Corbin. At the time of the accident, Maher was residing in the family household with his father, Paul Maher, and sister, Joan Maher, in Hastings, Minnesota.

After settling his claim against Corbin, Maher sought recovery from All Nation Insurance Company (All Nation), his insurer, and Mutual Service, the insurer for Paul Maher's two vehicles and for Joan's vehicle. Because none of the insurance policies provided for underinsured motorist coverage, Maher commenced a declaratory judgment action against Mutual Service and All Nation. The complaint sought to reform the insurance policies by imposing underinsured motorist coverage on the ground that the defendants failed to offer this coverage as required under Minn.Stat. § 65B.49, subd. 6(e).

Prior to trial, All Nation stipulated to the entry of $50,000 judgment against it.

In its July 8, 1983, judgment denying Maher's requested relief, the district court concluded that Mutual Service made meaningful offers of underinsured motorist coverage to Paul and Joan Maher. Maher appeals from that part of the judgment which denied him underinsured motorist coverage under Paul Maher's two policies.

The appeal raises the following questions:

1. Was the trial court's conclusion that Mutual Service made a meaningful offer of underinsured motorist coverage clearly erroneous?

2. Does an insurance policy which limits underinsured motorist coverage by definition to resident relatives who do not own a private passenger automobile, defined as a passenger or station wagon-type automobile, cover an owner of a pickup truck?

3. Is an insurance policy restriction which limits underinsured motorist coverage by definition to resident relatives who do not own an automobile, void as against public policy?

We answer all three questions in the affirmative and reverse.

1. As part of the comprehensive no-fault act passed in 1974, effective January 1, 1975, Minn.Stat. § 65B.49, subd. 6(e) (repealed 1980), required that insurers offer underinsured motorist coverage to their insureds as an option.

■■ This offer must be a meaningful one. *Kuchenmeister v. Illinois Farmers Insurance Co.*, 310 N.W.2d 86, 88 (Minn.1981). The insured must be given "enough information to make an intelligent decision * * *". *League General Insurance Co. v. Tvedt*, 317 N.W.2d 40, 42 (Minn.1980). Failure to make a meaningful offer may result in a court's imposing coverage and reading underinsured motorist coverage into the insurance policy by operation of law. *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 250 (Minn.1980).

In determining whether a meaningful offer has been made, the Minnesota Supreme Court in *Hastings v. United Pacific Ins. Co.*, 318 N.W.2d 849, 851–52 (1982), articulated four basic concerns: (1) that the method of the offer be commercially reasonable; (2) that the limits of the optional coverages be specified and not merely offered in general terms; (3) that the insurer intelligibly advise the insured of the nature of the optional coverage; and (4) that the insurer apprise the insured that the optional coverages are available for a relatively modest increase in premium.

The trial court relied on two exhibits in concluding that a meaningful offer was made by Mutual Service. The first exhibit was a letter sent to Paul Maher in 1972. This letter stated that the 1971 legislature required policyholders to be offered "Protection Against Underinsured Motorists— those who do carry liability insurance but at low, minimum limits." The lower half of this letter listed the premium increases for underinsured motorist coverage based on the insured's current uninsured liability limits, ranging from $.20 to $3.

The second exhibit was a mailing consisting of a one-page "Dear Policyowner" letter, a pamphlet entitled "Questions and Answers regarding Minnesota No-Fault Automobile Insurance" and a return envelope and computer form, all sent to Paul Maher in 1974. Of interest to this case is the following portion from the pamphlet:

Is broader protection available?

Yes. At your option, and for additional premium, you may purchase higher medical and non-medical no-fault limits and higher liability insurance limits, plus additional coverages. The new law requires that you be given the opportunity to purchase the following options:

For motor vehicle owners:

an additional $10,000, $20,000 or $30,000 of medical expense and rehabilitation benefits;

an additional $25,000/$50,000 of bodily injury liability insurance;

underinsured motorist coverage (per bodily injury liability limits).

The computer form was an application for optional no-fault coverages. One of the options listed was as follows:

Option III. Underinsured motorist coverage (select only one)

( ) $25,000 per person, $50,000 per accident.

or

( ) $50,000 per person, $100,000 per accident. (Available only if option II is selected, or greater limits are provided).

■■ The trial court found that these two mailings satisfied the "four concerns" of *Hastings*. Generally the issue of whether an adequate offer had been made is a fact issue for the trial court to resolve. *Frank v. Illinois Farmers Insurance Co.*, 336 N.W.2d 307, 311 (Minn.1983); *Yeager v. Auto-Owners Insurance Co.*, 335 N.W.2d 733, 736 (Minn.1983). However, the instant case involves a question of the meaning of documentary evidence. When the trial court relies solely on documentary evidence, a reviewing court accords no deference to the trial court's assessment of the meaning of that evidence. *Ploog v. Ogilvie*, 309 N.W.2d 49, 53 (Minn.1981).

■■ Our review of the exhibits leads to the conclusion that Mutual Service failed to

make the requisite meaningful offer. The 1974 pamphlet clearly fails to satisfy the third and fourth concerns of *Hastings*. It does not explain or define the nature of underinsured motorist coverage and it does not mention that the coverage is available for a relatively modest premium increase.

We are concerned that the trial court relied on the 1972 letter in determining that Mutual Service made a meaningful offer. We note that the legislature enacted the no-fault act primarily to provide compensation to injured persons through adequate coverage. Minn.Stat. § 65B.42 (1982). This purpose is reasonably furthered only by requiring the insurer to offer the underinsured motorist coverages in response to the new no-fault act. In our view, there is an implicit, if not explicit, assumption in the cases that the offer be responsive to the no-fault act. See, e.g. *Frank v. Illinois Farmers Insurance Co.,* 336 N.W.2d 307, 309–10 (Minn.1983); *Yeager v. Auto-Owners Insurance Co.,* 335 N.W.2d 733, 735 (Minn.1983); *Randall v. State Farm Mutual Automobile Insurance Co.,* 335 N.W.2d 247, 251 (Minn.1983); *Kuchenmeister v. Illinois Farmers Insurance Co.,* 310 N.W.2d 86, 87–88 (Minn.1981); *Holman v. All Nation Insurance Co.,* 288 N.W.2d 244, 249 (Minn. 1980).

The respondent suggests that the legislative intent in 1974 in enacting 65B.49, subd. 6, was merely that an offer of underinsured motorist coverage be made to insureds and that the 1972 letter, therefore, complies with the statute. We think it is unreasonable and unrealistic to expect that consumers will remember an insurance policy notice years after its receipt.

■ We hold that the duty statutorily imposed on Mutual Service to offer underinsured motorist coverage was a present one which could not be fulfilled by the prior letter mailed in 1972. Only a present offer ensures that the purchaser is provided with sufficient information to make an intelligent decision. Of course, an offer made prior to the effective date of the no-fault act, but in response to the act, would be a good faith attempt at complying with 65B.49, subd. 6(e). *See Randall v. State Farm Mutual Automobile Insurance Co.,* 335 N.W.2d 247, 249 (Minn.1983).

Because we have concluded that a meaningful offer of underinsured motorist coverage was not made, underinsured motorist coverage will be imposed by operation of law.

2. Mutual Service suggests that Maher is not an insured under his father's policies because of restrictive definitions therein. The following definitions in Paul Maher's policies are applicable to the court-imposed underinsured motorist coverage:

Part 1: Liability
DEFINITIONS:
"relative" means a relative of the named insured who is a resident of the same household, *provided neither he nor his spouse owns a private passenger automobile;* (emphasis supplied)
"private passenger automobile" means a private passenger or station wagon type automobile;

Mutual Service contends that although Maher was a relative residing in the same household as Paul Maher, the policy definitions deny Maher the status of an insured because Maher owned a private passenger automobile, to wit, a pickup truck.

■ Is a pickup truck within the definition of a private passenger automobile which is defined as a private passenger or station wagon type automobile? In interpreting insurance policy language, a court must give the terms "their plain, ordinary, and popular meaning." *Ostendorf v. Arrow Insurance Co.,* 288 Minn. 491, 495, 182 N.W.2d 190, 192 (1970). Moreover, we are guided by "Minnesota's strong policy of extending coverage rather than allowing coverage to be restricted by confusing or ambiguous language * * *". *Hennen v. St. Paul Mercury Insurance Co.,* 312 Minn. 131, 136, 250 N.W.2d 840, 844 (1977). Any reasonable doubt as to the meaning of the language of an insurance policy must be resolved against the insurer. *Columbia Heights Motors, Inc. v. Allstate Insurance Co.,* 275 N.W.2d 32, 36 (Minn.1979).

Applying these rules to the instant question, a pickup truck is not within the plain and ordinary meaning of the phrase "passenger or station wagon type automobile." The well-recognized rule of "expressio unius est exclusio alterius" is also applicable. Under this maxim, the expression of specific things in a contract implies the exclusion of all not expressed. *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 175, 84 N.W.2d 593, 599 (1957). By carefully limiting the definition of private passenger automobile to "private passenger or station wagon type automobile," Mutual Service has impliedly excluded pickup trucks from its definition.

3. A further consideration requires finding William Maher an insured under Paul Maher's insurance policies. The restriction in the policy which limits underinsured motorist coverage by definition to resident relatives who do not own an automobile is void as against public policy.

The Minnesota Supreme Court has shown no hesitancy in striking exclusionary clauses in similar cases. See *Anderson v. Illinois Farmers Insurance Co.*, 269 N.W.2d 702 (Minn.1978) and *Rosenberger v. American Family Mutual Insurance Co.*, 309 N.W.2d 305 (Minn.1981).

Mutual Service contends that its restrictive definition was authorized by Minn.Stat. § 65B.43, subd. 5 (1982). That statute defines insureds as including "the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 as an insured." This provision is an explicit exclusion of persons already insured from coverage under another policy. *Anderson v. Illinois Farmers Insurance Co.*, 269 N.W.2d 702, 705 (Minn.1978). However,

it is noteworthy that this statute does not authorize the exclusion of persons who own another automobile, as Mutual Service's policy attempts to do.

The *Anderson* and *Rosenberger* cases require the conclusion that appellant is an insured under Paul Maher's policies, although the two cases deal with uninsured motorist coverage and the instant case involves underinsured coverage. Both types of coverage are first-party and both types existed prior to the enactment of the no-fault law. Both types of coverage provide protection from an inadequately compensated injury caused by an accident with an inadequately insured vehicle. *Meyers v. State Farm Mutual Automobile Insurance Co.*, 336 N.W.2d 288 (Minn.1983). Finally, both types of coverage follow the person, not the vehicle. *American Motorist Insurance Company v. Sarvela*, 327 N.W.2d 77, 79 (Minn.1982).

Therefore, we conclude that the "owned vehicle" restrictive definition should be voided on public policy grounds. "Policy exclusions which attempt to prevent the coverage from following the person are inconsistent with the purposes of the Minnesota No Fault Act." *Id.*

For the reasons heretofore stated, we order that the judgment of the trial court be reversed in part. Judgment shall be entered in favor of appellant declaring that underinsured motorist coverage be imposed on each of Paul Maher's two automobile insurance policies.

Reversed.