Eleanor E. TIBBALS, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY OF BLOOMINGTON, et al., Respondents.**

No. C5–85–238.

Court of Appeals of Minnesota.

July 2, 1985.

Gerald J. Seibel, Meshbesher, Singer & Spence, Minneapolis, for appellant.

R. Gregory Stephens, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondents.

Considered and decided by PARKER, P.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Eleanor Tibbals brought this action against respondent State Farm Mutual Automobile Insurance Company (State Farm) for a reformation of her State Farm insurance policies. Tibbals sought to reform the insurance policies by adding residual liability and underinsured motorist coverage on the ground that State Farm failed to offer this coverage as required under Minn.Stat. § 65B.49, subd. 6 (1978) (repealed 1980). After a three-day trial, a jury found that State Farm had made a meaningful offer of underinsured motorist and residual liability coverage to Tibbals. This is an appeal from an order denying Tibbals' motion for judgment notwithstanding the verdict or, in the alternative, a new trial. We affirm.

## FACTS

In 1979, Tibbals was struck by a car and she anticipates her injuries will exceed the value of the other party's insurance coverage. At the time of the accident, Tibbals owned two vehicles which were insured under separate policies issued by State Farm. Each policy had the statutorily-minimum liability coverage ($25,000 per person and $50,000 per occurrence). No underinsured motorist coverage was included in either policy.

Evidence introduced at trial indicates that Tibbals' first contact with State Farm was in December 1977. At that time, David Stonedale, a now-deceased agent for State Farm, issued an insurance policy on one of Tibbals' cars. Tibbals testified at trial that she did not recall whether Stonedale offered her additional residual liability coverage during that transaction. She was certain, however, that he did not talk to her about underinsured motorist coverage.

Tibbals let this insurance policy lapse between June 1978 and August 1978. In August 1978, her former husband, Kerry Tibbals, reapplied through Stonedale for State Farm insurance on the same vehicle. Acting as Eleanor's agent, he signed her name on the application.

In January 1979, Kerry Tibbals applied through Stonedale for a State Farm insurance policy covering Eleanor's other car. Eleanor testified at trial that she did ask Kerry to purchase the insurance, but the signature on the January 1979 application was not Kerry's.

Kerry Tibbals was unable to testify at trial due to an illness which has caused memory loss. The parties stipulated that if Kerry had been able to testify, he would have testified that he reapplied for the insurance in August 1978 and he signed that application. He also would have testified that he applied for insurance in January 1979, but he would have given no testimony about the signature on that application. With respect to both transactions, he would have testified that he could not re-

call whether he and Stonedale discussed liability limits or under-insured motorist coverage, but that he is aware that liability limits and underinsured motorist coverage are generally discussed.

All three insurance applications provided spaces for an applicant to select higher liability limits and underinsured coverage. These spaces were blank on all three applications.

At trial, Stonedale's supervisor Rollin Hall testified that he instructed Stonedale and his other agents on the standard practice and procedure for issuing State Farm insurance. This standard practice included offering an applicant underinsured motorist coverage and liability insurance above the statutory minimum. During the period when offers of residual liability and underinsured motorist coverage were mandatory, Hall testified that he observed between one and ten of Stonedale's presentations. Hall never testified that he actually observed Stonedale or any of his other agents make the mandatory offers to an applicant.

### ISSUES

1. Did the trial court err in admitting testimony of insurance agents' standard practice when the testimony was not based on personal observation?

2. Was there sufficient evidence to support the jury's finding that the insurer adequately offered residual liability and underinsured motorist coverage to the insured?

### ANALYSIS

### I.

■ Initially, Tibbals argues that the trial court erred in admitting Hall's testimony about the standard practice of his agents (including Stonedale). Hall testified that he trained his agents to make the mandatory offers of residual liability and underinsured motorist coverage and that his agents' standard practice was to make the mandatory offers. We do not find that the trial court erred in admitting this testimony. Hall did not testify that he personally observed Stonedale or any of his other agents make the mandatory offers to their clients. The "standard practice" evidence, however, was still relevant and it offered support to State Farm's claim that Stonedale made the mandatory offers to Eleanor or Kerry Tibbals. *See, e.g., Yeager v. Auto-Owners Insurance Co.,* 335 N.W.2d 733, 735 (Minn.1983); *Kuchenmeister v. Ill. Farmers Ins. Co.,* 310 N.W.2d 86, 88 (Minn.1981).

### II.

Tibbals next contends that the evidence was insufficient to support the jury's finding that State Farm made the statutorily-required offers to Eleanor or Kerry Tibbals. We find that the evidence was sufficient.

■ The now repealed mandatory optional coverages provisions of Minn.Stat. § 65B.49, subd. 6 (1978) (repealed 1980) required insurers to offer their insureds certain optional coverages including residual liability and underinsured motorist coverage. The mandatory offer must be meaningful and give the insured enough information to make "an intelligent decision." *League General Insurance Co. v. Tvedt,* 317 N.W.2d 40, 42 (Minn.1982). The insurer, not the insured, has the burden of proving that it made the mandatory offer of coverages. *Holman v. All Nation Insurance Co.,* 288 N.W.2d 244, 248 (Minn.1980).

■ An offer of optional coverage is meaningful if it satisfies the four concerns articulated in *Hastings v. United Pacific Insurance Co.,* 318 N.W.2d 849, 851–53 (Minn.1982). The "four concerns" are:

(1) that the notification be commercially reasonable; (2) that the insurer specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) that the insurer intelligibly advise the insured of the nature of the optional coverage; and (4) that the insured be apprised that optional coverages are available for a relatively modest increase in premiums.

*Randall v. State Farm Mut. Auto. Ins. Co.*, 335 N.W.2d 247, 249 n. 3 (Minn.1983). *See also Maher v. All Nation Insurance Co.*, 340 N.W.2d 675, 678 (Minn.Ct.App. 1983).

■ State Farm is only required to show that it made one "meaningful" offer of residual liability and underinsured motorist coverage to Tibbals. *Randall*, 335 N.W.2d at 250.

■ The record before us demonstrates that State Farm met this burden. Viewing the evidence in the light most favorable to State Farm, we find that there was sufficient competent evidence which reasonably tends to support the jury's finding that State Farm, through its agent Stonedale, made the mandatory offers to Eleanor or Kerry Tibbals. *See Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn.1983).

Eleanor testified that it was possible that Stonedale had offered her the additional residual liability. Likewise, Kerry testified by stipulation that he was aware that both liability limits and underinsured motorist coverage are generally discussed when a person applies for automobile insurance. Hall testified that he trained and supervised Stonedale and that it was standard practice for his agents to make the mandatory offers and explain the nature, limits and costs of the residual liability and under-insured motorist coverage. While Hall did not testify that he specifically observed Stonedale make the mandatory offers to an applicant, the jury could have reasonably concluded in light of all the evidence that Stonedale followed the standard practice of Hall's agents and made the mandatory offer to either Eleanor or Kerry.

The application itself does not satisfy any of the *Hastings* requirements, but it does tend to support the jury's findings since the application did provide a place for an applicant to select higher liability limits and underinsured motorist coverage.

■ We recognize that not all the testimony at trial supports the jury's conclusions. Eleanor testified that Stonedale never talked to her about underinsured motorist coverage. However, the jury had the duty to weigh and consider all the evidence. We cannot say their conclusions are perverse or palpably contrary to the evidence. *See Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 76 (Minn.1981). Furthermore, State Farm only had to prove that it made the mandatory offer on one of the three occasions when the Tibbalses applied for insurance through Stonedale. Thus, despite the conflicting evidence on one of the transactions, the jury still could have concluded that Stonedale made the mandatory offers to either Eleanor or Kerry.

We do not consider that any of the evidence *by itself* satisfies the *Hastings* requirements, but the evidence viewed as a whole does reasonably tend to support the jury's finding that State Farm made a "meaningful offer" to either Eleanor or Kerry which satisfies the "four concerns" of *Hastings*.

## DECISION

The trial court did not err in admitting Hall's testimony. There was sufficient competent evidence to support the jury's finding that State Farm adequately offered residual liability and underinsured motorist coverage to Tibbals.

Affirmed.

PARKER, Judge (dissenting).

I respectfully dissent. The burden of proof is upon the insurer to show that it made the statutorily mandated offer of coverage. *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 248 (Minn.1980). The majority acknowledges that the application itself does not satisfy any of the requirements of *Hastings v. United Pacific Insurance Co.*, 318 N.W.2d 849, 851–53 (Minn.1982); the premium notice contained only a general offer of additional coverages. This decision is founded on a presumed oral offer by the deceased agent, David Stonedale.

Mr. Stonedale is unavailable to testify to any such oral offer or to his customary

practice, in the absence of direct recollection. The trial court received and this court affirms and relies upon the testimony of the agent's supervisor that he instructed Stonedale on the standard practices and procedures of the insurance company. He did not even say that he had observed the agent making mandatory offers to applicants to see if he was carrying out his instructions. The evidence simply proves nothing and is a dangerous extension of Minn.R.Evid. 406 (Habit). If admitted to show that he *did* make the oral offer, it is, of course, hearsay and not within any of the exceptions recognized by Minn.R.Evid. 804.

I would reverse on the failure of respondent insurance company to sustain its burden of proof.