**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent,**

v.

**Lori J. Frederickson STEINHAUS, et al., Respondents,**

**Robert Steinhaus, Appellant.**

**No. C8–86–714.**

Court of Appeals of Minnesota.

Feb. 3, 1987.

William M. Hart, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp, & Brennan, Minneapolis, for respondent.

Thomas O. Albers, Bloomington, for respondents Lori J. Frederickson Steinhaus, et al.

William Kvas, DeParq, Perl, Hunegs, Rudquist & Koenig, P.A., Minneapolis, for appellant.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

This appeal arises from an insurance coverage dispute in a declaratory judgment action. Robert Steinhaus suffered severe injuries when a car driven by his wife Lori Frederickson collided with a tow truck. After the accident, Steinhaus filed a claim against Frederickson's insurer, State Farm Insurance Company. State Farm refused to honor the claim because the policy coverages had been suspended. The jury in the ensuing declaratory judgment action returned a verdict for State Farm, and Steinhaus appeals. We affirm the jury's finding of no coverage.

## FACTS

On November 20, 1981, Lori Frederickson obtained uninsured motorist coverage, bodily injury, and no-fault insurance from State Farm for her Chevrolet Impala. Among other provisions, the policy contained the standard "newly acquired vehicle" provision which provides coverage for replacement vehicles. She listed Robert Steinhaus as a permitted driver under the policy. State Farm sent the policy,

effective through November 20, 1982, to Frederickson's home address.

Six months later, on May 16, 1982, Steinhaus totally destroyed the Impala in an accident. On May 20 Frederickson called her insurance agent, reported the accident, and apparently requested cancellation of the policy.[1] Richard Steinkopf, the agency's office manager, testified that, based on his standard procedures, he explained to Frederickson the option of suspending her policy coverage until she obtained a replacement vehicle rather than canceling the policy. He also explained that suspended coverage is reinstated by request.

Frederickson decided to suspend coverage, and Steinkopf notified State Farm's regional office. State Farm's suspension procedure includes refunding unearned premiums to the insured at the end of the six month policy. On May 26, 1982, State Farm sent Frederickson an "Acknowledgment of Vehicle Withdrawn From Use," which states in part:

> In return for your certification that the vehicle insured under the policy number indicated above has been withdrawn from use, it is agreed that as of the effective date shown the coverages indicated above have been suspended in accordance with your request. The suspended coverage(s) *will be reinstated upon your request effective not earlier than the receipt of such request by the company of any of its authorized agents.*

(Emphasis supplied). In the box marked "Coverages Now in Force," the word "none" appeared. State Farm sent the Acknowledgment to the same address appearing on Frederickson's insurance application and on the declarations page of her policy. They also sent a carbon copy of the Acknowledgment to Frederickson's agent. On November 22, 1982, State Farm refunded Frederickson's unearned premium, $93.20. The check was marked "Refund Due to Policy Termination." Frederickson cashed the check.

On September 20, 1982, Frederickson replaced the Impala with a 1969 Ford Mustang. In obtaining license plates, she listed the Mustang as insured under her suspended State Farm policy. Frederickson did not notify State Farm to reinstate coverage under her policy. On October 15, 1982, Frederickson, driving the Mustang, turned left in front of an oncoming vehicle. Steinhaus, a passenger, was severely injured in the accident.

On November 5, 1982, Frederickson reported the accident to State Farm. State Farm denied liability, claiming that coverage had been suspended. Steinhaus argued that the Mustang was covered under the "newly acquired vehicle" provision of the policy for 30 days irrespective of notice to the insurer. State Farm brought a declaratory judgment action and both parties moved for summary judgment. The court denied the motions and identified the fact issue for trial:

> The issue in this case is whether Lori Frederickson and State Farm agreed that before the suspended coverage could be reinstated she would have to notify the company that she had acquired a replacement vehicle or whether Frederickson and State Farm agreed to a 30 day grace period.

At trial Steinhaus requested that the court instruct the jury that the facts supporting suspension of coverage must be found by clear and convincing evidence because such a change would result in a modification of the contract. The motion was denied.

A jury returned a special verdict concluding Frederickson agreed to suspend the policy and agreed that policy coverages would be reinstated only upon her notification to State Farm.

At the close of trial, Steinhaus moved for judgment notwithstanding the verdict, a new trial and amended findings. All motions were denied, and Steinhaus appeals. State Farm also seeks review of evidentiary issues.

---

1. Frederickson died on August 9, 1984, in an    unrelated accident and did not testify at trial.

## ISSUES

1. Did the trial court err in denying appellant's request to instruct the jury that the facts supporting suspension of policy coverage must be shown by clear and convincing evidence?

2. Did the trial court abuse its discretion in ruling on challenged evidentiary and procedural matters?

## ANALYSIS

### I

The legal and factual issues raised by this appeal center on Lori Frederickson's suspension of her insurance coverage. The jury found that Frederickson and State Farm mutually agreed that coverage would be effective only upon a request for reinstatement. On appeal Steinhaus raises procedural and evidentiary questions, primarily a claim that a new trial is required because the trial court failed to instruct the jury that a modification of an insurance policy must be proved by clear and convincing evidence.

An insurance policy is a contract and is analyzed under general principles of contract law. *United States v. National Insurance Underwriters*, 266 F.Supp. 636, 638 (D.Minn.1967). In an insurance contract, the insured selects the type of protection and promises to pay a premium amount commensurate with the coverage selected. In exchange, the insurer promises to indemnify the insured in case of accident or loss. Steinhaus' policy contains certain operative terms and conditions relevant to payment and coverage, but does not mention suspension of coverage.

Insurers routinely allow their insureds to suspend policy coverage as a matter of convenience. Suspensions are most often used when vehicle use is seasonal. Suspensions are beneficial to the insured because premium payments are not made during the time the coverages are suspended and the policy can be activated without going through the formalities of reapplying. Reinstatement is automatic upon request, and unearned premiums are paid back if the policy is not reinstated within six months of the suspension.

■ Suspensions generally occur through separate agreements rather than changing the specific policy terms. Such an agreement suspends coverage, but does not modify the terms of indemnification. It is a separate agreement, outside the terms of the policy, temporarily suspending the parties' mutual promises. Because it is a separate agreement, State Farm need only prove its existence by the greater weight of the evidence.

■ The insurance office manager's testimony on standard practice for suspensions indicates that the procedure was explained to Frederickson, she agreed, and the necessary forms were processed. *See Tibbals v. State Farm Auto Ins. Co.*, 370 N.W.2d 679, 681 (Minn.Ct.App.1985). In addition, the "Acknowledgment of Vehicle Withdrawn From Use" sent by State Farm to Frederickson's home address clearly states notification is required prior to reinstatement. Although Steinhaus disputes whether Lori Frederickson ever received the Acknowledgment, there is evidence State Farm sent it to the same address as on the application, the policy declaration page, and the refund check. Frederickson received the policy and the check; the jury could properly infer she also received the Acknowledgment. The record supports the jury's findings. Frederickson suspended her insurance coverage and did not notify State Farm to reinstate the coverage.

■ Steinhaus alternatively argued the notification for reinstatement of coverages happened automatically when the accident occurred. We recognize there is a policy provision which operates by law to automatically provide insurance for 30 days when an insured acquires a new automobile. *Quaderer v. Integrity Mutual Ins. Co.*, 263 Minn. 383, 390, 116 N.W.2d 605, 610 (1962). Steinhaus claims the automatic coverage applies here because Frederickson owned the Mustang for only 23 days

prior to the accident. We disagree. The newly acquired vehicle clause operates only when the policy is in effect.

Frederickson suspended her coverages before she received the Mustang. State Farm acknowledged the suspension in writing, and, under the agreement, Frederickson was required to notify State Farm before coverages would be reinstated. She did not notify State Farm she had replaced her vehicle and she did not request reinstatement of coverage. The newly acquired vehicle clause does not apply.

## II

Steinhaus also challenges the admission of Frederickson's premium refund check as evidence of her state of mind and the trial court's ruling that State Farm's counsel's closing argument was not prejudicial.

The trial court admitted the signed and canceled premium refund check to show Frederickson's state of mind. The court instructed the jury not to view her cashing of the check as a waiver of her claims under the policy.

When considering the admissibility of evidence, a reviewing court defers to the trial court's ultimate decision, *United States v. Boyd*, 610 F.2d 521, 527 (8th Cir.1979), *cert. denied*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777, and will not reverse that decision unless the court has abused its discretion. *State v. Schluter*, 281 N.W.2d 174 (Minn.1979).

 The check is probative of Frederickson's acceptance of the suspension status, and also tends to prove receipt of the Acknowledgment of suspension, because they were sent to the same address. The trial court did not abuse its discretion in allowing the check into evidence.

Steinhaus also claims the trial court improperly denied his request for a new trial based on State Farm's counsel's improper closing argument. Steinhaus argues that the remarks raised the inference that, by cashing the check after consulting with her attorney, Frederickson acknowledged that no coverage existed. Steinhaus argues

counsel's comments misrepresented the evidence and invited speculation about the content of their conversation, a subject his attorney was specifically prohibited from covering.

 The question of whether to grant a new trial for the misconduct of counsel is governed by variable considerations, but rests in the discretion of the trial court. *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 523 (Minn.1979). Although counsel's remarks may have stretched the permissible inferences from the testimony, their impact was deflected by the court's instructions that the check was not to be viewed as a waiver of her rights. The trial court did not abuse its discretion in denying a new trial.

Because we affirm the jury's verdict in favor of State Farm, we do not address those evidentiary issues State Farm raises for review.

### DECISION

Affirmed.