AMERICAN FAMILY INSURANCE
GROUP, petitioner,
Respondent,

v.

Harold L. SCHROEDL, Appellant.

No. C7–99–428.

Court of Appeals of Minnesota.

Aug. 24, 1999.

Jeanne H. Unger, Rider, Bennett, Egan & Arundel, LLP, Minneapolis, for respondent.

Robert V. Espeset, Barry L. Blomquist, Jr., Blomquist & Espeset, Minneapolis, for appellant.

Considered and decided by KALITOWSKI, Presiding Judge, CRIPPEN, Judge, and PARKER, Judge.

## OPINION

CRIPPEN, Judge.

Appellant, a retiree who asserted a claim against his No–Fault insurer for $1,472 lost income resulting from an automobile-related injury, disputes the trial court's application of a policy exclusion for any "work loss" benefits. Appellant contends that respondent insurer was legally obligated to provide coverage for appellant's lost income. We reverse the trial court and reinstate the income-loss award determined earlier by an arbitrator and vacated by the trial court.

## FACTS

Appellant Harold Schroedl, a retiree, purchased an automobile insurance policy

from respondent American Family Insurance Group in 1992. Asked then whether "work loss" coverage was appropriate, he indicated that it was not. As a result, the policy excluded work loss coverage, defined elsewhere in the policy as coverage for all income and disability benefits mandated by Minn. Stat § 65B.44 (1998). Without further inquiry by respondent as to whether the work loss exclusion was still appropriate, the policy was renewed annually thereafter through 1997.

On December 6, 1997, appellant, then 77 years old, was seriously injured when struck by a car at a gas station.[1] At the time of the incident, appellant owned a triplex. His conservator submitted to respondent insurer a claim for $1,472 paid to others for doing work previously done by appellant in his rental enterprise. Respondent denied the claims, reasoning that appellant's waiver of work loss coverage barred such claims. Appellant then filed for arbitration.

The arbitrator determined that appellant's 1992 decision to exclude work loss coverage did not relieve respondent of its responsibility, under Minn.Stat. § 65B.491 (1998), to re-determine, upon each policy renewal, if such an exclusion was appropriate. For this and other reasons, the arbitrator determined that appellant was entitled to income loss benefits calculated with regard to his income loss of $1,472.[2]

The trial court determined, notwithstanding the language of Minn.Stat. § 65B.491, which states that it is the "responsibility" of the insurer to "inquire as to the applicability of this section," that the statute did not make the insurer "responsible for making certain that persons aged 65 or older are informed about wage loss reimbursement insurance if they could reasonably be expected to benefit from such coverage." Rather, the court found that the purposes of the statute were fulfilled by any inquiry of the insurance company that would prevent it from avoiding a premium reduction for a senior citizen by claiming that the policy was purchased before the insured reached age 65 and that the insurer had "no way of knowing" whether the insured continued to need income-loss coverage.

## ISSUE

Does Minn.Stat. § 65B.491 mandate that No-Fault insurers inquire at each policy renewal if senior-citizen insureds can benefit from wage-loss reimbursement coverage?

## ANALYSIS

■ The interpretation of statutes is a question of law, which this court reviews de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

■ The parties agree that, under certain circumstances, insured senior citizens are to enjoy a premium reduction associat-

---

1. Appellant died as a result of his injuries in December 1998.

2. Minnesota Statute § 65B.44 (1998) mandates that an auto insurance policy provide "disability and income loss benefits," and Minn.Stat. § 65B.43, subd. 6 (1998), defines "income" as:

    [S]alary, wages, tips, commissions, professional fees, *and* other earnings from work or tangible things of economic value produced through work in individually owned businesses, farms, ranches or other work. *Id.*

    The arbitrator determined that Minn.Stat. § 65B.491, which prohibits providing "wage loss reimbursement" coverage for certain senior-citizen insureds, specifically targets "wage" losses but does not permit exclusion of all "disability and income loss benefits." In effect, the arbitrator determined that "wage loss" was only a subset of "income and disability loss."

    Without comment on this question, the trial court's order disavowed the arbitrator's opinion and allowed the insurer, acting under the "wage loss" provision of Minn.Stat. § 65B.491, to exclude all income loss benefits otherwise mandated under Minn.Stat. § 65B.44. Because we determine that the insurer failed to fulfill its responsibility to inquire as required by Minn.Stat. § 65B.491, we need not determine whether the content of the exclusion was lawfully formulated.

ed with eliminating unneeded wage loss coverage. But the parties differ in their approach to the application of the provisions of Minn.Stat. § 65B.491 (1998).[3] Respondent suggests that the statute provides senior citizens with nothing more than an option to buy or forgo buying a particular type of coverage and its policy treats the issue as merely an offer for optional coverage, giving the insured "the opportunity to exclude or forgo excluding" work loss benefits. Thus, according to respondent's reasoning, because appellant elected against work loss coverage in 1992, respondent's agent did not need to inquire further about work loss coverage when appellant subsequently renewed his policy. This analysis coincides with the trial court's view of the statute; the court concluded that the insurer had no ongoing responsibility to inquire whether income loss protection was necessary so long as it once gave the insured an opportunity to "keep or exclude" the work loss coverage provided under the policy.

■ An insurer needs to offer optional coverage only once. *See, e.g., Randall v. State Farm Mut. Auto. Ins. Co.*, 335 N.W.2d 247, 250 (Minn.1983) (holding that insurers are required to make only one legally sufficient offer of optional coverage); *Hastings v. United Pac. Ins. Co.*, 318 N.W.2d 849 (Minn.1982) (implying that optional coverage need not be re-offered at each policy renewal). These two cases involved Minn.Stat. § 65B.49, subd. 6 (1978) (repealed 1980), which stated only that insurers "shall offer" certain optional coverages. As discussed below, the language of Minn.Stat. § 65B.491 mandates something substantially different from an offer of optional coverage and thus makes the present case distinguishable from either *Randall* or *Hastings*. According to its plain meaning, the statute in this case, Minn.Stat. § 65B.491, does not deal with optional coverage but distinctly declares a responsibility of the insurer to determine its mandatory obligations when it issues or renews a plan of No–Fault coverage with a person who is age 65 or older.

Consistent with the language of the statute, appellant contends that Minn.Stat. § 65B.491 has implications other than a mere one-time election for or against coverage. Appellant properly suggests that there are two conflicting mandates put upon an insurer by the law. On the one hand, Minn.Stat. § 65B.44 compels a No–Fault insurer to provide "income loss benefits." On the other hand, Minn.Stat. § 65B.491 compels the insurer to discount its premium and eliminate coverage for an insured senior citizen, respecting income "that the insured will not reasonably be expected to be able to receive."

To resolve this apparent conflict, Minn.Stat. § 65B.491 explicitly makes insurers responsible for determining, as to each insured, whether they are mandated to provide coverage or mandated to exclude it. Contrary to respondent's assertion, nothing in Minn.Stat. § 65B.491 suggests that the insured makes any election whatsoever.[4] Instead, it is the duty of the insurer to determine whether or not Minn.Stat. § 65B.491 applies. When "issuing or renewing the plan," it is the "responsibility" of the insurer "to inquire as to the applicability of this section." Minn.Stat. § 65B.491. The insurer determines its

3. Minn.Stat. § 65B.491, enacted in 1987, provides:

After August 1, 1987, no plan of reparation security issued to or renewed with a person who has attained the age of 65 years may provide coverage for wage loss reimbursement that the insured will not reasonably be expected to be able to receive. It is the responsibility of the person issuing or renewing the plan to inquire as to the applicability of this section. The rate for any plan for which coverage has been excluded

or reduced pursuant to this section must be reduced accordingly. This section does not apply to self-insurance.

4. The stance of the insurer, offered to suggest that wage loss coverage is reviewed only once for a retiree, conforms to the insurer's practice as indicated in this case. In his 1992 application for coverage, appellant was required to check a box that stated his election either to "Keep Work Loss" or "Exclude Work Loss."

mandate, to formulate the mandatory coverage, by inquiring, as a matter of fact, as to what wage loss reimbursement coverage the insured will reasonably "be expected to be able to receive." In other words, based on information provided by the insured, the insurer determines whether or not it must provide the insured wage loss reimbursement coverage.[5] Except through the "inquiry" process of section 65B.491, the statutes make no provision for waiving the mandate of income loss coverage stated in Minn.Stat. § 65B.44.

Respondent contends that if the language of Minn.Stat. § 65B.491 is ambiguous and subject to two interpretations— one requiring only a single inquiry and the other requiring inquiry at each renewal— then this court should find only a duty to perform a single inquiry because "the legislature did not intend to impose a continuing duty upon insurance companies." This argument is premised on an initial observation that the words of the statute are less than explicit. But we do not see any ambiguity in the statute. The statute pronounces a "responsibility" of the insurer – the party "issuing or renewing" a plan. When the words in a statute are clear and unambiguous, a court must give effect to the plain meaning of the language. Minn. Stat. § 645.16 (1998); *Tuma v. Commissioner of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn.1986). Moreover, an interpretation requiring an ongoing inquiry is ratified by an observation that it is the insurer who is caught between two conflicting statutory mandates when writing policies for senior citizens.

Noting that the second sentence of Minn.Stat. 65B.491 reads, "it is the responsibility of the person issuing or renewing the plan to inquire as to the applicability of this section," respondent next contends that it is "evident from the use of the disjunctive 'or' that the inquiry must only be made once." To the contrary, the term "issuing or renewing" is in respect to any plan and follows a declaration that "no plan * * * issued to or renewed" can include certain coverage. Moreover, the statutory mandate for income loss benefits is ongoing, for present and future policy periods. Minn.Stat. § 65B.44. By the declarations of the statutes, the responsibility to inquire arises whenever a plan is issued or renewed.[6]

## DECISION

Because the legislature has imposed on insurers an on-going responsibility to inquire regarding an insured senior citizen's need for wage loss reimbursement coverage, the trial court erred when it vacated the arbitrator's award.

**Reversed.**

PARKER, Judge * (concurring specially)

I concur in the result, but would reverse on an additional basis; I would hold that the language of the policy exclusion of "work loss" benefits is impermissibly broad because it eliminates statutorily-mandated coverage.

Under Minn.Stat. § 65B.44 (1998), an auto insurance policy must provide "disability and income loss benefits." Although this whole term is not defined, Minn.Stat. § 65B.43, subd. 6 (1998), defines income as

> salary, wages, tips, commissions, professional fees, *and* other earnings from work or tangible things of economic val-

---

5. It is beyond the scope of issues in this case to determine if insurance companies are required to provide a variety of coverages at a corresponding variety of premiums in order to meet the senior insureds' diverse needs for "wage loss reimbursement" coverage.

6. Given the record before this court, it does not appear that appellant's need for wage loss reimbursement coverage changed greatly between 1992 and the time of his injuries. But this fact did not relieve respondent of its ongoing responsibility to inquire regarding the income that appellant was reasonably "expected to be able to receive."

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ue produced through work in individually owned businesses, farms, ranches or other work.

(Emphasis added.)

The insurance policy at issue requires senior citizens to waive all "work loss" coverage, not just "wage loss" coverage as contemplated by Minn.Stat. § 65B.491 (1998), and, thus, contravenes the no-fault act. Minn.Stat. § 65B.44, subd. 1, provides that:

> Basic economic loss benefits *shall* provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle, subject to any applicable deductibles, exclusions, disqualifications, and other conditions, and *shall* provide a maximum of $40,000 for loss arising out of the injury of any one person, consisting of:
>
> \* \* \* \*
>
> (b) a total of $20,000 for income loss \* \* \*.

(Emphasis added.)

And Minn.Stat. § 65B.44, subd. 3, provides that "[d]isability and income loss benefits *shall* provide compensation for 85 percent of the injured person's loss of present and future gross income from inability to work \* \* \*." (Emphasis added.)

The Minnesota Supreme Court has stated, in the context of a no-fault act case, that "contract provisions which conflict with statutory law will not be enforced." *Roering v. Grinnell Mut. Reins. Co.*, 444 N.W.2d 829, 833 (Minn.1989) (insurance policy exclusion provision conflicts with coverage guaranteed by no-fault act and is therefore void). It has also stated that

> an insurer's liability is governed by the contract between the parties only as long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes.

*Streich v. American Family Mut. Ins. Co.*, 358 N.W.2d 396, 399 (Minn.1984); *see also Hertz Corp. v. State Farm Mut. Ins. Co.*, 573 N.W.2d 686 (Minn.1998) (provisions of a car rental agreement limiting rental company exposure violates the no-fault act, thus unenforceable); *Malmin v. Minneso-*

*ta Mut. Fire & Cas. Co.*, 552 N.W.2d 723, 725 (Minn.1996) (noting that the supreme court has, on several occasions, "voided provisions commonly used in automobile insurance policies due to perceived conflicts with the No–Fault Act's provisions"); *Schmidt v. Clothier*, 338 N.W.2d 256, 261 (Minn.1983) (insurance policy provisions requiring insured to exhaust tortfeasor's liability limits before underinsured motorist benefits will be paid are void as against public policy of no-fault act).

The arbitrator concluded that:

> [N]either Minn.Stat. § 65B.491, nor the claimed exclusion or waiver signed by Mr. Schroedl in 1992, precludes recovery of the income loss benefits sought in this case. This conclusion is reached for the following reasons. The "disability and income loss benefits" provided by Minn. Stat. § 65B.44, subd. 3 is a broad category of benefits. It provides compensation for loss of income resulting from disability or inability to work. Income can be in several forms, and earned wages are but one type of income. Minn.Stat. § 65B.491, relied upon by Respondent in arguing that Claimant's policy excluded these benefits, is more limited in its effect. It does not broadly deal with "disability and income loss benefits," but rather is limited to "wage loss" reimbursement. That is, Minn. Stat. § 65B.44, subd. 3, provides disability and income loss benefits, while Minn. Stat. § 65B.491 relates to exclusion of wage loss benefits. These are different terms. Harold Schroedl's decrease in income from his income property is an "income loss," but not a "wage loss." Had the legislature in adopting § 65B.491 intended to limit all forms of income loss benefits for individuals over age 65, it would have more clearly used the term "income loss" as that term appears in Minn.Stat. § 65B.44, subd. 3. It is more likely that the Legislature, in passing Minn.Stat. § 65B.491, was dealing with "wages" that a person of age 65 years or older "would not reasonably be expected to be receiving" because that

person was retired from regular employment. While the form utilized by Respondent provides for a waiver of "work loss" benefits, this form cannot restrict benefits more than the provisions of Minn.Stat. § 65B.491.

I agree with the reasoning of the arbitrator and would hold that coverage must be implied to require reimbursement of "income loss" benefits.